GUIDRY, Judge.
In this suit plaintiff seeks recovery of benefits allegedly due under a policy of insurance dated February 2, 1979 issued to her by NN Investors Life Insurance Co., Inc., hereafter Investors. The policy in question provides the insured with a stipulated monthly payment during periods of total disability by reason of accidental injury and also provides for payment of a stipulated sum as “monthly hospital indemnity”.
*1375 On March 2, 1980 plaintiff fell and broke her leg. She subsequently underwent surgery which required her hospitalization on two separate occasions for a total of 22 days. Plaintiff filed the instant suit on May 8,1980 seeking a money judgment plus penalties and attorney’s fees alleging that in spite of timely notice defendant had failed to pay the benefits due her under the policy of insurance issued by Investors. Following institution of suit and on May 19, 1980, defendant made payment to plaintiff of all benefits then due under the insurance contract. At the time of trial the parties stipulated that all payments under the insurance contract were current, the only issue being plaintiff’s entitlement to penalties and attorney’s fees under LSA-R.S. 22:657. The trial court rendered judgment in favor of plaintiff awarding her double the benefits due under the contract of insurance and attorney’s fees in the amount of $3500.00. Defendant appealed suspen-sively. Plaintiff has answered the appeal seeking additional attorney’s fees for services on appeal.
The record reflects no conflict in the evidence, all of which is directed to the issue of what information Investors received regarding plaintiff’s claim; when it was received; and, the sufficiency of that information. A brief chronological review of that evidence is essential to a proper understanding of the issue presented.
On March 2, 1980 plaintiff fell and broke her leg. She was taken to Opelousas General Hospital where she remained until March 14, 1980. During this period of hospitalization the break was repaired surgically by Dr. Ladislas Lazaro III. Investors was first informed of plaintiff’s accident and hospitalization on March 10, 1980 by receipt of an undated, unsigned memo written by plaintiff’s sister-in-law. Defendant thereafter forwarded claim forms to plaintiff for completion and return. After plaintiff was discharged from the hospital she attempted to complete the claim form, presumably without assistance, and as a result she did not supply the information required at the top of the form, concerning her date of birth, policy number, address, occupation, employer’s name etc. More importantly, she failed to have completed the entire back portion of the claim form, which is the part to be completed by the attending physician. Plaintiff forwarded this partially completed claim form and a bill which she had received from Dr. Lazaro for his surgical fee and x-rays to the defendant and same was received on March 31, 1980. On April 14, 1980 defendant wrote a letter to plaintiff reading in its entirety as follows:
“Dear Ms. Webb:
Thank you for sending us your medical bills. However before we can process your claim, we need the enclosed claim form completed both back and front in its entirety. Please be sure your attending physician completes and signs its reverse side. Also be sure your physician indicates the exact dates you are unable to work (if possible).
When we get this completed claim form, we will be able to process your claim promptly.” [1]
On the same date, defendant wrote to Opel-ousas General Hospital requesting hospital records for the confinement of March 2, 1980 through March 14, 1980. On April 25, 1980 defendant received a reply from the hospital indicating that Dr. Lazaro had not yet completed the medical record suggesting that the requested information could be furnished at a later date. Plaintiff and Dr. Lazaro completed the claim form as directed by defendant’s letter and it was forwarded to Investors and received by the latter on April 28, 1980. On May 5, 1980 defendant received the hospital bill for plaintiff’s confinements from March 2, 1980 to March 14, 1980 and from April 3, 1980 to April 10, 1980. Plaintiff filed this suit on *1376 May 8, 1980. Defendant made payment of the benefits due under the policy on May 19, 1980.
In concluding that plaintiff was entitled to penalties and attorney’s fees under LSA-R.S. 22:657 because of defendant’s unreasonable refusal to timely pay benefits the trial judge reasoned as follows:
“Accordingly, we must count back 30 days from May 19, 1980, until April 19, 1980, to see if the payment was made within 30 days after proper proofs were furnished, and if not, penalties must be assessed, ‘unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist.’ In other words, we must see if the defendant has (sic) proper proofs before April 19, 1980.
Further, under the terms of the policy, when defendant receives a notice of claim, it must forward proof blanks within 15 days or the claimant will be ‘deemed to have complied with the requirements of this policy as to proof of loss, etc.’ Since Mrs. Webb sent a notice on March 8, 1980, which was received by the defendant on March 10, 1980, (D-l), we must also look to see whether defendant sent blanks to plaintiff by the 25th of March. It is apparent she received the blanks, as she filled them out on March 20, 1980.
Accordingly, we must now see if payment was made within the prescribed time. We do this by examining what defendant had in its hands on a certain date (the date of receipt of proof) and determining if the defendant paid within 30 days after said date.
D-l, Letter of Plain- - Received by defend-tiff ant on March 10, 1980
D-2, Claim form - Received by defendant on March 31, 1980
with hospital bill and statement, including (Note: the top of the ‘Physician’s State- form is not filled ment' out due to defendant's fault.)
So, on March 31, 1980, long before the crucial date of April 19, 1980, the defendant had in its hands D-l and D-2.
The Statute then says the claim shall be paid ‘not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer... . ’
The policy requires ‘Notice of Claim.’ This was accomplished.
The policy under ‘Claim Forms’ requires the company to furnish blanks within a certain period or be deemed to have received proof.
Under ‘Proof of Loss,’ the policy doesn’t require sacremental ‘forms,’ but merely says ‘written proof of loss.’
Accordingly, in this Court’s opinion, on March 31, 1980, the defendant knew of the claim, knew the nature of the injury, knew what the doctor diagnosed (not from the plaintiff but from the hospital), knew the plaintiff was in the hospital and for what, and arbitrarily and capriciously refused and did not pay this claim within 30 days as required by statute. All the defendant had to do, if they wished further verification, was simply to call the doctor or the hospital. Instead, they became involved in unreasonable bureaucratic red tape and did not pay this claim when it was due, as provided for by statute.
The Court assesses the penalty of R.S. 22:657, and fixes the attorney fees at $3,500.00”
We reverse, finding that the trial court clearly erred in reaching the aforestated conclusion.
LSA-R.S. 22:657 provides in pertinent part as follows:
“A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the *1377 assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney’s fees to be determined by the court. The district court of the parish where the insured lives or has his domicile shall have jurisdiction to try such eases.”
The quoted section requires payment not more than thirty days from the date “upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist”.
In the instant case the terms of the policy require Investors, upon receipt of a notice of claim, to furnish claim forms to the insured within fifteen days after the giving of such notice, in default of which the claimant is deemed to have complied with the requirements of the policy as to proof of loss. This being considered it necessarily follows that the claim forms furnished by Investors to its assureds pursuant to this policy provision are the forms “required by the terms of the policy”. As the trial judge correctly found, Investors timely furnished plaintiff with the necessary forms for proof of loss. It then became .plaintiff’s obligation to complete the form furnishing all information required to support her claim. This plaintiff failed to do as the claim form first sent to Investors and received on March 31, 1980 was materially deficient in that the portion reserved for completion by the attending physician was not completed and not signed. The trial judge discounted this deficiency in proof finding that the bills for the physician’s fee which were signed by Dr. Lazaro and which were forwarded along with the claim form supplied whatever deficiency existed in the unfilled portion of the claim form. This was error for the proof was not in the “form required by the terms of the policy”, as required both by the policy and LSA-R.S. 22:657, but more importantly the partially filled claim form and Dr. Lazaro’s bills did not furnish defendant with information as to plaintiff’s period of hospitalization and the term of her disability, material items of proof which defendant required and was entitled to before payment.
The policy in question provides for payment only in the event of total disability as defined in the policy and an additional monthly hospital indemnity. However, such payments are made for only such period as the insured is totally disabled and/or confined to the hospital. In other words, if disability and/or hospital confinement is less than one month benefits are computed at a daily rate of indemnity equal to one-thirtieth of the monthly indemnity. Therefore, proof by the insured, “in the form required by the terms of the policy”, i.e., the claimant’s statement corroborated by the physician’s statement, of the period of hospitalization and the term of disability is essential before the benefits due under the policy can be calculated. Until this proof is furnished by the insured to the insurer, the latter cannot be held to be unreasonably withholding benefits due under the policy.
Although the partially completed claim form received by Investors on March 31, 1980 did set forth the period of plaintiff’s initial hospitalization and a statement that the period of disability was unknown, this information was given by the claimant under the sub-title “Policyholder’s Statement”. Investors was clearly entitled to corroboration of this information by plaintiff’s attending physician before payment of benefits. The “Attending Physicians Statement” on the reverse side of the form was intended for that purpose. This form, as previously stated, was left completely blank and although Dr. Lazaro’s bills were forwarded along with the partially completed claim form, the bills did not furnish corroboration of this vital information. Under the circumstances we opine that Investors was justified in delaying payment of benefits until such time as this vital information was corroborated. Corroboration of this vi *1378 tal data and proof of loss, as required by the terms of the policy, was received by Investors on April 28, 1980 and thereafter on May 19,1980, well within the thirty days as required by LSA-R.S. 22:657, Investors paid to plaintiff all benefits which were then due under the terms of the policy.
In brief, able counsel for appellee urges that the many decisions of this and other appellate courts to the effect that proofs of loss need not necessarily be in writing or in any formal style, fully supports the trial court’s judgment. We disagree finding the cases cited to us, i.e., Humphries v. Puritan Life Insurance Co., 311 So.2d 534 (La.App. 3rd Cir. 1975); Wilkins v. Allstate Insurance Company, 173 So.2d 199 (La.App. 1st Cir. 1965); Paul v. National American Insurance Company, 361 So.2d 1281 (La.App. 1st Cir. 1978), writ denied, 363 So.2d 1385 (La.1978), inapposite. The Wilkins ■ and Paul cases involved an insured’s right to penalties and attorney’s fees under LSA-R.S. 22:658. The language of LSA-R.S. 22:658 differs materially from that contained in LSA-R.S. 22:657. Section 658 requires “satisfactory proofs of loss” whereas Section 657 requires “written notice and proof of claim, in the form required by the terms of the policy”. Although Humphries, supra, and other appellate decisions have applied the Wilkins and Paul rationale to cases arising under Section 657 without regard to the difference in the language contained in the two sections we need not address this issue directly for all of the many decisions referred to employ this rationale only in instances where the record supports a finding that the Insurer had notice of all of the facts surrounding the loss and necessary for calculation of the benefits to which the insured was entitled under the policy. Moore v. St. Paul Fire and Marine Insurance Company, 193 So.2d 882 (La.App. 3rd Cir. 1967); Gatte v. Coal Operators Casualty Company, 225 So.2d 256 (La.App. 3rd Cir. 1969); Artigue v. La. Farm Bureau Mutual Insurance Company, 339 So.2d 880 (La.App. 3rd Cir. 1976), writ, denied, 341 So.2d 1132 (La.1977). We have previously demonstrated that the insurer in the instant case was not apprised of all of the facts required by calculation of the benefits due plaintiff under the policy until April 28, 1980 and that well within 30 days of that date all benefits then due were paid. Accordingly, the rationale of the cited cases clearly have no application in the instant case.
For the reasons assigned the judgment of the district court is reversed and set aside and it is now ordered, adjudged and decreed that plaintiff’s suit, insofar as it seeks penalties and attorney’s fees under the provisions of LSA-R.S. 22:657, is dismissed with prejudice. Plaintiff-Appellee, Shirley Webb, is cast with all costs at the trial level and on appeal.
REVERSED AND RENDERED.

. The record reflects that sometime following the mailing of the incomplete claim form and presumably prior to the mailing of the quoted letter, plaintiff’s son made three telephone calls to defendant’s claim department to inquire about the delay in payment of benefits. Plaintiffs son admitted that on each occasion he was informed that the claim could not be processed until the insurer received the attending physician’s statement properly completed and signed.